2013-1588, -1589, 2014-1112, -1687

**United States Court of Appeals**
**for the Federal Circuit**

CONTENT EXTRACTION AND TRANSMISSION LLC,

*Plaintiff-Appellant,*

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION,

*Defendant-Appellee*,

and

THE PNC FINANCIAL SERVICES GROUP, INC. and
PNC BANK, N.A.,

*Defendant-Appellees*,

---------------------------------------------

DIEBOLD, INCORPORATED,

*Plaintiff-Cross-Appellant*,

v.

CONTENT EXTRACTION AND TRANSMISSION LLC,

*Defendant-Appellant*,

and

MITCHELL MEDINA, CATHERINE ELIAS, JOHN DOE COMPANIES 1-100,
JOHN DOE COMPANIES 1-99, TD BANK GROUP, TD BANK, N.A.,
and JEAN-MARC ZIMMERMAN,

*Defendants*.

Appeals from the United States District Court for the District of New Jersey in Nos. 12-CV-2501, 12-CV-6960, and 12-CV-7640, Judge Michael A. Shipp

# BRIEF FOR APPELLEES

Noam J. Kritzer, Esq.
Bakos & Kritzer
147 Columbia Turnpike, Suite 102
Florham Park, New Jersey 07932
Attorneys for Appellees, The PNC Financial Services Group, Inc. and PNC Bank, N.A.

Frederick L. Whitmer, Esq
Steven Gardner, Esq.
E. Danielle Williams, Esq.
Kilpatrick, Townsend & Stockton LLP
1114 Avenue of the Americas
New York, New York 10036
Attorneys for Appellee
Wells Fargo Bank, N.A.

## STATEMENT OF INTEREST

In conformity with the Certificates of Interest filed by the Appellees in this Court, I hereby certify as follows:

Appellee Wells Fargo N.A. is the real party in interest here whose parent corporation is Wells Fargo & Company. In addition to the undersigned, Frederick L. Whitmer, Wells Fargo N.A., my partners in Kilpatrick, Townsend & Stockton LLP, Steven Gardner and E. Danielle Williams, represented Wells Fargo in the District Court and do so here.

Appellees PNC Financial Services Group, Inc., and PNC Bank, N.A. are the real parties in interest here. PNC Bank, N.A. is a wholly-owned subsidiary of PNC Bancorp., Inc., which in turn is a wholly owned subsidiary The PNC Financial Services Group, Inc. The PNC Appellees have been represented in this Court and in the District Court by the Bakos and Kritzer law firm, through Edward P. Bakos and Noam J. Kritzer.

*Fredeerick L. Whitmer /s/*

March 6, 2014

# TABLE OF CONTENTS

Page

I. STATEMENT OF RELATED CASES .......... 1

II. STATEMENT OF JURISDICTION .......... 1

III. STATEMENT OF THE ISSUES .......... 1

IV. STATEMENT OF THE CASE .......... 2

V. STATEMENT OF THE FACTS .......... 7

A. The '855 Patent .......... 7

B. The '508 Patent .......... 8

C. The CET Patents as a Group .......... 9

VI. SUMMARY OF ARGUMENT .......... 11

A. The CET Patents are Invalid for Failure to Claim Patent-Eligible Subject Matter Pursuant to 35 U.S.C. § 101 .......... 11

B. The District Court Correctly Determined that Factual Findings were Unnecessary to Determine that the CET Patents Do Not Claim Patent-Eligible Subject Matter Under 35 U.S.C. § 101 .......... 14

C. The District Court Properly Invalidated All Claims of The CET Patents Without Requiring a Claim-By-Claim Analysis For Each of the Two Hundred Forty Two Claims at Issue .......... 17

VII. ARGUMENT .......... 19

A. Standard of Review .......... 19

B. Standards for Determining Patent Eligibility Under 35 U.S.C. § 101 .......... 20

C. The District Court Appropriately Applied Prevailing Law in Dismissing CET's Actions .......... 23

1. The CET Patent Claims are Non-Statutory Under the "Mental Steps" Approach .......... 23

2. The District Court Properly Determined that the CET Patent Claims Failed The MOT Test .......... 28

Case: 13-1588 Document: 43 Page: 4 Filed: 03/06/2014

3. The CET Patent Claims are Directed to Abstract Subject Matter Under The Preemption Approach ....................31

D. The District Court Properly Determined that Detailed Factual Findings Were Unnecessary to Determine the CET Patents Are Invalid Under § 101 ....................34

E. The District Court Properly Determined that an Explicit Claim-By- Claim Analysis is Not Required to Invalidate the CET Patents ....................38

F. A Court had Previously Invalidated The Invention Claimed in The Patents-In-Suit and The Mere Addition of a Scanner to Digitize Information Cannot Resuscitate The Invention ....................41

VIII. CONCLUSION AND RELIEF SOUGHT ....................45

Case: 13-1588 Document: 43 Page: 5 Filed: 03/06/2014

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Accenture Global Services, GMBH et al. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013)....44

*Alice Corporation PTY Ltd. v. CLS Bank International,* 717 F.3d 1269 (Fed. Cir. 2013, *en banc)* *cert. granted* ---US---(Dec. 6, 2013).... *passim*

*Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987)....10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....7

*Bancorp Servs. L.L.C. v. SunLife Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012).... 5, 19

*Benson, Parker v. Flook*, 437 U.S. 584 (1978).... 22, 29

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010).... *passim*

*Conoco, Inc. v. Energy & Environmental Intern.*, 460 F.3d 1349 (Fed. Cir. 2006).... *passim*

*CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012).... 10, 29

*CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, ___ Fed. App'x ___, Nos. 2012-1673 (Fed. Cir. Feb. 26, 2014).... *passim*

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011).... *passim*

*Dealtertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012)....29

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)....21

*Diamond v. Diehr*, 450 U.S. 175 (1981).... 21, 22, 29

*Energy Transp. Group v. William Demand Holding A.S*, 697 F.3d 1342 (Fed. Cir. 2012).... 19, 40

*Eon-Net, LP, Zimmerman & Levi, L.L.P. and Jean-Marc Zimmerman v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011)....41

*Ergo Licensing, LLC v. CareFusion 303, Inc.,*
673 F.3d. 1361 (Fed. Cir. 2012)....14

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012)....24

*Glory Licensing LLC v. Toys R Us, Inc.*,
Case No. 09-cv-4252-FSH; 2011 WL 1870591 (D.N.J. 2011) .... 42, 43, 44

*Glory Licensing LLC v. Toys R Us, Inc.*,
Case No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16, 2011), appeal dismissed, 459 F. App'x. 916 (Fed. Cir., 2011)....43

*Gottschalk v. Benson*,
409 U.S. 63 (1972) .... 21, 24, 29

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008) (*en banc*) ....7

*In re Katz Interactive Call Processing Patent Litig.,*
639 F.3d 1303 (Fed. Cir. 2011)....14

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
256 F.3d 1323 (Fed. Cir. 2001)....20

*Lighting Ballast Control LLC v. Phillips*,
-- F.3d --, 2014 WL 667499 (Fed. Cir., Feb. 21, 2014) (*en banc*)....7

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
132 S.Ct. 1289 (2012) .... 14, 21, 22, 28

*Research Corp. Tech., Inc. v. Microsoft Corp.*,
627 F.3d 859 (Fed. Cir. 2010).... 27, 33

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997)....20

*Shinseki v. Sanders*,
556 U.S. 396, 129 S. Ct. 1696 (2009)....20

*SiRF Tech, Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010).... 27, 28, 29

Case: 13-1588 Document: 43 Page: 7 Filed: 03/06/2014

*SmartGene, Inc. v. Advanced Biological Laboratories, SA, et al.*,
No. 2013-1186 (Fed. Cir. January 24, 2014) .............................................. *passim*

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006)........................................................... 18, 20, 40

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1335 (Fed. Cir. 2013).................................................................. *passim*

*WMS Gaming Inc. v. International Game Technology,*
*184 F.3d 1339* (Fed. Cir. 1999) ........................................................................14

**Statutes**

25 U.S.C. § 101 ........................................................................................20

28 U.S.C. § 2111 ......................................................................................20

35 U.S.C. § 101 ..................................................................................... *passim*

**Rules**

D.N.J. L. Civ. R. 7.1(d)(6) .........................................................................40

Fed R. Civ. P. 61 ......................................................................................20

Fed. Cir. Rule 28(b) ........................................................................... 2, 7, 19

Fed. R. Civ. P. 12(b)(6)........................................................................ *passim*

## I. STATEMENT OF RELATED CASES

Appellees, The PNC Financial Services Group, Inc., PNC Bank, N.A. (collectively, "PNC Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") submit this brief jointly and accept Content Extraction and Transmission, LLC's ("CET") Statement of Related Cases, except to observe that *SmartGene, Inc. v. Advanced Biological Laboratories, SA, et al.*, No. 2013-1186 (Fed. Cir. January 24, 2014) (non-precedential), and *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, ___ Fed. App'x ___, Nos. 2012-1673, -1674, (Fed. Cir. Feb. 26, 2014) (non-precedential) were decided after CET's principal brief in this appeal was filed.

## II. STATEMENT OF JURISDICTION

Appellees do not dispute CET's Statement of Jurisdiction.

## III. STATEMENT OF THE ISSUES

Appellees submit the following list of issues that properly frame the appropriate issues for resolution within this appeal.

1. Whether the District Court properly granted PNC Bank's Motion to Dismiss as a matter of law by ruling all of the claims of the patents-in-suit invalid under 35 U.S.C. § 101 as representing abstract concepts not eligible for patent protection.

2. Whether the District Court properly granted PNC Bank's Motion to Dismiss as a matter of by ruling all of the claims of the patents-in-suit invalid under 35 U.S.C. § 101 without requiring claim construction.

3. Whether the District Court properly determined that merely adding a digitizing step (or scanner) to a method (or system) that was already found to be invalid as a matter of law does not save the claims from a determination of invalidity under 35 U.S.C. § 101 as a matter of law.

All of these questions should be answered in the affirmative, necessitating affirmance of all the Orders appealed from.

## IV. STATEMENT OF THE CASE

Pursuant to Fed. Cir. Rule 28(b), Appellees supplement CET's Statement of the Case as follows.

This appeal respecting the Appellees stems from the District Court of New Jersey's dismissal of all 242 claims of U.S. Patent Number 5,258,855 (the "'855 patent"), U.S. Patent Number 5,369,508 (the "'508 patent"), U.S. Patent Number 5,625,465 (the "'465 patent"), and U.S. Patent Number 5,768,416 (the "'416 patent") (collectively, the "CET Patents", A82-A88, A288-A295), in the District Court action, 12-cv-06960 (the "PNC action") and in the District Court action 12-cv-02501(the "Wells Fargo Action").

PNC Bank filed a motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), asserting that all 242 claims of the CET Patents are directed to the same abstract concept that fails to meet the eligibility requirements of 35 U.S.C. § 101. (A200-A227). PNC Bank represented to the District Court that all 242 claims of the CET patents contain "similar claims" directed towards the same unpatentable abstract method. (A208-A211). It was clear from PNC's motion papers that PNC Bank's motion was directed to *all* of the claims of the CET Patents, and that PNC Bank had alleged that all of the claims of the CET Patents were directed toward variations of a single abstract method, thereby requiring dismissal of the action. (CET Br. 3-4 ("...PNC asserted that the claims of the CET Patents are directed to subject matter that is not patent eligible, and therefore the claims are invalid.");CET Br. 21 ("PNC simply asserted that all other claims are similar to the two claims it actually discussed."); (A243) (arguing that "there is no basis to decide patent eligibility of the well over two hundred claims that Defendants did not address in their Opening Brief.")). Despite having an opportunity to distinguish even one claim from among the 242 asserted claims from the method that PNC Bank alleged in its motion to be encompassed in all the claims and also abstract, CET's Opposition merely argued that it "was not required to identify in the Complaint specific asserted claims of the patents-in-suit." (A240, fn. 11).[1]

---

[1] CET's insinuation that PNC Bank was somehow required in its motion to

On July 31, 2013, the District Court granted PNC Bank's motion to dismiss, and, having found the patents invalid for the reasons set forth in its well-reasoned opinion, dismissed CET's Complaint against Wells Fargo on its own motion as a matter of law inasmuch as the same patents had been asserted against Wells Fargo. (A1-A2).

In determining that the CET Patents did not deserve patent protection under § 101, the District Court carefully considered the claim language of *all* of the claims of the CET Patents, finding that all these claims related to the same method for processing information:

> "As discussed more fully below, the Patents-in-Suit focus on the processing of information in a three step process. First, information or data from a hard copy is gathered by an 'automated digitizing unit,' such as a scanner, into computer memory. Second, the information gathered by the scanner is recognized as corresponding to certain data fields. Third, the information corresponding to the data fields on the hard copy documents are then stored in corresponding data fields in computer memory."(A5).

---

address separately the invalidity of each of the 242 claims in its motion to dismiss (CET Br. 4) would yield an untenable result and is demonstrably wrong by virtue of CET's own actions. First, CET neither supported that premise in its arguments to dismiss before the District Court, (A228-A261), nor did CET refute the premise in its Opening Brief to this Court, choosing itself to aggregate all four patents as claim a method for processing information. (CET Br. 6-10) ("As described in the four patents, which issued on substantially the same specification, the claimed systems and methods implement specific techniques for processing information embedded in hard copy documents."). By CET's own description, both in the District Court and in this Court, its claims, however construed, all are directed to and claim the same, abstract method.

Case: 13-1588 Document: 43 Page: 12 Filed: 03/06/2014

The District Court then carefully weighed whether a claim-by-claim analysis was required in light of the facts presented in the context of the asserted patents and determined, correctly, that "[w]here the claims, as here, are substantially similar and linked to the same abstract idea, the Court is free to dispose of the additional claims in a less detailed fashion." (A12) (internal citations omitted). The Court accordingly found that such a claim by claim analysis was not necessary, and this brief demonstrates that the District Court's conclusion in this respect was indeed correct and deserves affirmance.

In addition, CET inaccurately represents to this Court that the District Court dismissed all claims "without construing any of the claim terms, without considering any evidence of the meaning of any terms of any of the claims...[and] explained its approach by quoting this Court's statement in *Bancorp Servs. L.L.C. v. SunLife Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012), that 'claim construction is not an inviolable prerequisite to a validity determination under § 101.' (A10-11)." (CET Br. 5). CET's suggestion mischaracterizes the District Court's actions. The District Court was not cavalier in finding the CET Patents invalid as CET suggests; to the contrary, the District Court recognized and applied prevailing law that it "must adopt a construction of the claims 'most favorable to the patentee' and 'the complaint and the patent must by themselves show clear and convincing evidence that the claim is not directed to an application

of an abstract idea, but to a disembodied abstract idea itself." (A11) (citing *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1349 (Fed. Cir. 2013).

With this correct understanding of the law and of the Court's responsibilities under the law in making this analysis, the District Court determined that the "'basic character of the claimed subject matter' in dispute in this action is clearly evident to the Court and no further construction of the claims is required." (A11). That conclusion, too, was fully merited in the context of this action and deserves affirmance. Thus, the District Court ultimately invalidated the CET Patents because "the Patents-in-Suit encapsulate invalid abstract ideas, *even when construed in the manner most favorable to Plaintiff*." (A11)(emphasis supplied).

CET's arguments arguing for reversal are contrary to this Court's decisions in its most recently decided, most relevant cases and should be rejected. For example, this Court's holdings in *SmartGene, Inc. v. Advanced Biological Laboratories, SA, et al.*, No. 2013-1186 (2014)(non-precedential) and *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, ___ Fed. App'x ___, Nos. 2012-1673, -1674, slip op. at 7 n.1 (Fed. Cir. Feb. 26, 2014) (non-precedential), directly refute CET's arguments here. CET's arguments that (1) the District Court failed to analyze all 242 claims of the CET Patents, (2) formal claim construction is required prior to dismissal of the CET Patent claims, and (3) the CET Patents do not claim "merely mental steps" were all rejected by this Court in *SmartGene* and

Case: 13-1588 Document: 43 Page: 14 Filed: 03/06/2014

*CyberFone* for reasons elaborated below. CET offers nothing in this appeal to distinguish these recent cases, which the District Court here anticipated in the Orders appealed from. That these cases are non-precedential is immaterial, except to recognize that they express legal principles already well-established.[2]

## V. STATEMENT OF THE FACTS

Pursuant to Fed. Cir. Rule 28(b), Appellees enlarge CET's Statement of Facts by reproducing the first independent claim of the '855 patent and '508 patent and commenting on the CET Patents as relevant to the issues on this appeal:

### A. The '855 Patent

The '855 patent, entitled "Information Processing Methodology," issued to System X, L.P. of New York, New York as assignee on November 2, 1993. (A89).

---

[2] The District Court here found the claims invalid even by construing the claims in the light most favorable to the patentee, as *Ultramercial* suggested should be done, arguably in dicta. As the Federal Circuit has only recently reaffirmed, it holds that claim construction is a matter of law. *See Lighting Ballast Control LLC v. Phillips*, -- F.3d --, 2014 WL 667499, at *16 (Fed. Cir., Feb. 21, 2014) (*en banc*). The same is true for questions of patent eligibility under §101. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (*en banc*) (citations omitted), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010). Under generally prevailing law, then, the District Court was not obligated as a matter of prevailing law, as it did here, to give CET all favorable inferences. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). Applying the usual pleading standard under Rule 12(b)(6), moreover, only reinforces the correctness of the District Court's decision invalidating these claims under the more lenient standard the District Court applied.

The '855 patent includes eight independent claims, all requiring digitizing, storing and processing of data from hard copy documents. The first independent claim is reproduced below:

> Claim 1. A method of processing information from a diversity of types of hard copy documents, said method comprising the steps of:
>
> (a) receiving output representing a diversity of types of hard copy documents from an automated digitizing unit and storing information from said diversity of types of hard copy documents into a memory, said information not fixed from one document to the next, said receiving step not preceded b scanning, via said automated digitizing unit, of a separate document containing format requirements;
>
> (b) recognizing portions of said hard copy documents corresponding to a first data field; and
>
> (c) storing information from said portions of said hard copy documents corresponding to said first data field into memory locations for said first data field.

(A112).

## B. The '508 Patent

The '508 patent, also entitled "Information Processing Methodology," issued to System X, L.P. of New York, New York as assignee on November 29, 1994. (A116).

The '508 patent includes four independent claims, all requiring digitizing, storing and processing of data from hard copy documents. The first independent claim is reproduced below:

> Claim 1. A method of processing information from a diversity of hard copy documents, said method comprising the steps of:
>
> (a) receiving output representing a diversity of hard copy documents from an automated digitizing unit and storing information from said diversity of hard copy documents into a memory, said information not fixed from one document to the next;
>
> (b) identifying portions of said hard copy documents corresponding to a first variable; and
>
> (c) storing information from said portions of said hard copy documents corresponding to said first variable into memory locations for said first variable.

(A139).

### C. **The CET Patents as a Group**

All the CET Patents describe "techniques for processing information embedded in hard copy documents." (CET Br. p 6). The above-recited claims are representative of the systems and methods claimed by the CET Patents generally, which were comprehensively and correctly described by the District Court as follows:

> "As discussed more fully below, the Patents-in-Suit focus on the processing of information in a three step process. First, information or data from a hard copy is gathered by an 'automated digitizing unit,' such as a scanner, into computer memory. Second, the information gathered by the scanner is recognized as corresponding to certain data fields. Third, the information corresponding to the data fields on the hard copy documents are then stored in corresponding data fields in computer memory."(A5).

Part of CET's argument depends on its statement that, "[r]egarding claim 1 of the '855 patent. the Patent and Trademark Office Examiner wrote that the claim

is allowable because 'the prior art fails to teach among the other limitations of the claim, "said receiving step not preceded by scanning, via said automated digitizing unit, of a separate document containing format requirements."' (A697-A698)" (CET Br. 10).[3] From this, CET then urges, incorrectly, that "[i]n holding the claim invalid, along with over 200 other claims of the four patents, the District Court did not discuss these limitations, or the way these and other limitations circumscribe the scope of each of the claims." The opposite is true: the District Court specifically determined, after painstaking consideration of four[4] separate authorities from this Court, that "the use of the scanner is pre-solution activity that does not provide any meaningful limitation on the extent of the claims contained in the Patents-in-Suit." (A15-A23). Thus, despite CET's claims that the District Court ignored the impact of the inclusion of a scanner on the claimed method, the Record is clear that the District Court specifically did consider the legal impact of

[3] Perhaps more relevantly, CET did *not* present any part of the prosecution histories of any of the CET Patents to the District Court in its argument there. Accordingly, CET's argument that refers to and/or relies on the prosecution histories of the CET Patents should be disregarded as beyond the scope of the record in this Court. See *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 746 (Fed. Cir. 1987) (where no part of file history was before the district court, submission of excerpts to the Federal Circuit was improper).

[4] The District Court additionally relied on the District Court of Delaware's holding in *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012), which this Court has very recently affirmed. *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, ___ Fed. App'x ___, Nos. 2012-1673, -1674, (Fed. Cir. Feb. 26, 2014) (non-precedential).

Case: 13-1588 Document: 43 Page: 18 Filed: 03/06/2014

adding both a scanner and a computer to the claimed method before reaching the correct conclusion that CET Patents were invalid. (A23) ("The breadth of the Patents-in-Suit is staggering and the inclusion of a scanner and computer into the process confers no meaningful limit upon their scope.")

## VI. SUMMARY OF ARGUMENT

### A. The CET Patents are Invalid for Failure to Claim Patent-Eligible Subject Matter Pursuant to 35 U.S.C. § 101

As the District Court recognized and CET does not contest, the claims at issue are directed toward an method and system for processing information. The claims generally recite (1) processing information generated by a scanner from hard copy documents, (2) recognizing the information as corresponding to different data fields, (3) storing the information in a computer memory corresponding to the different data fields.[5]

The steps of identifying information printed on hard copy documents, recognizing the information corresponds to different data fields, storing the information in different data fields, and even transferring the field-specific

---

[5] CET also characterizes the claims of the patents-in-suit to include a transferring step which is not present in all of the claims of the patents-in-suit. (A10). That too is a new argument. To the extent CET is now arguing, for the first time on appeal, that the transfer of information to one or more other computer applications will somehow satisfy the threshold required by 35 U.S.C. § 101, Appellees disagree with the characterization, but, in any event, CET's suggestion was not made to the District Court, making it beyond the Record here and therefore to be ignored.

information to other applications for use are indisputably mental steps. One need only review the example of alleged infringement provided by CET to determine that the patents-in-suit purport to cover steps that have been accomplished manually by bank tellers for decades prior to the filing of the patents-in-suit. The essence of CET's claim is that Appellees supposed infringe the patents-in-suit because an ATM accomplishes automatically, which bank tellers have accomplished manually for decades:

> "A bank customer feeds the check into the ATM, which immediately scans the check and recognizes one or more information items on the check, such as the amount of the check, the account number on the check, and the routing number on the check...After verification, the ATM can send the information from the check to a number of applications, both local and remote, including:
>
> > (1) an application for printing a deposit receipt containing a scanned representation of the check and the amount of deposit;
> > (2) an application for (i) emailing to the customer the transaction verification, and (ii) sending the transaction verification to the electronic banking center for future access by the customer;
> > (3) an application for transmitting the amount of the check and the scanned information to a bank employee who visually compares the automatically recognized amount to the amount in the scanned image;
> > (4) an accounting application, for crediting the depositor's account with the amount of the check (and possibly debiting the account against which the check was written); and/or
> > (5) an application that interacts with a computer system of another bank (*e.g.*, a clearing bank), for crediting the depositor's bank with the amount of the check, and debiting the amount from the payor's bank."

(CET Br. 8).

Case: 13-1588 Document: 43 Page: 20 Filed: 03/06/2014

To conclude that the patents-in-suit do *not* merely automate a series of mental steps as CET suggests should be done, requires ignoring the fact that banks have been performing check-clearing services manually for close to a century.[6] One would also have to ignore CET's own admission that the purpose of the purported invention of the patents-in-suit was to speed up the existing manual process. ("In this way, labor and delays from manual processing of information embedded in ink and paper of the hard copy documents are reduced, or even completely avoided.") (CET Br. 6) ("It is also an object of the invention to provide a system which reduces the amount of manual labor required to process information originating from a hard copy document") (A105).

As further evidence of the abstract nature of the claims of the patent-in-suit, they fail to meet the "machine or transformation" test as formulated by this Court. Mere utilization of (1) a scanner to digitize hard copy documents, and (2) a general purpose computer[7] for reading the document, storing the information in specific

---

[6] The Court may take judicial notice of the fact that the Federal Reserve created a check-clearing system for United States banks shortly after its formation in 1913.

[7] CET's characterization of the computer as a "specially-configured computer" is both unsatisfactory and wrong. (CET Br. 11). A general purpose computer running software to automate a manual process is not "specially-configured." *SmartGene*, at *9 (non-precedential). The common patent specification also fails to identify the computer as anything but a general purpose computer. (A92-93, A106)(non-precedential). In any event, the patents fail to disclose any

data fields, and transferring the information to other applications, does not equate to a machine that "plays a meaningful role in the performance of the claimed invention," required to satisfy the machine test under present law. *See, e.g., SmartGene*, No. 2013-1186, at *8 (non-precedential); *Ultramercial,* 722 F.3d 1335, 1345; *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1297-98 (2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011). Likewise, the digitization, recognition, storage and/or transmission of hard copy data do not represent a *transformation* of data. Indeed, CET has never argued that its claims satisfy the transformation test.

### B. The District Court Correctly Determined that Factual Findings were Unnecessary to Determine that the CET Patents Do Not Claim Patent-Eligible Subject Matter Under 35 U.S.C. § 101

The District Court correctly recognized that though "it will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter," such dismissal was appropriate where, as here, "Rule 12(b)(6) is used to assert an affirmative defense, dismissal is appropriate only if the well-pleaded factual allegations in the complaint, construed in the light most

---

algorithms, as would be required for a 'specially-configured' computer. *See, WMS Gaming Inc. v. International Game Technology, 184 F.3d 1339* (Fed. Cir. 1999); *In re Katz Interactive Call Processing Patent Litig.,* 639 F.3d 1303, 1316 (Fed. Cir. 2011); and *Ergo Licensing, LLC v. CareFusion 303, Inc.,* 673 F.3d. 1361, 1364-65 (Fed. Cir. 2012).

Case: 13-1588 Document: 43 Page: 22 Filed: 03/06/2014

favorable to the plaintiff, suffice to establish the defense." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013) ("Ultramercial II") (internal citations omitted). The District Court's Order,[8] makes manifest that the present case fits precisely within "the exception, not the rule" that this Court referred to in *Ultramercial II,* requiring dismissal. *Id.*

CET's argument appears to be predicated on the assumption that the District Court invalidated the claims without any factual findings, while at the same time arguing that statements by the District Court "appear to be findings of fact," concluding "[t]hus, the District Court apparently acknowledged, if only by implication, that some findings of fact are necessary to rule on PNC's motion to dismiss." (CET Br. 17) (emphasis omitted). CET thereby fails to recognize that the District Court assumed that the "abstractness" inquiry under § 101 was indeed "rife with underlying factual issues" as stated by this Court in *Ultramercial II* and then, in conformity with the language in *Ultramercial II,* it identified and resolved all such underlying factual issues in CET's favor in addition to the legal issues required in deciding to invalidate the CET patents, whether or not such inquiry was in fact legally required. As the District Court observed: "As explained more fully

---

[8] Despite the fact that neither CET nor PNC Bank brought the *Ultramercial II* decision to the District Court's attention, the Court nevertheless recognized and considered that relevant holding in reaching its decision.

below, and commensurate with the instruction of the *Ultramercial II* court, the Patents-in-Suit encapsulate invalid abstract ideas, *even when construed in the manner most favorable to Plaintiff*." (A11) (emphasis added).

CET thus mischaracterizes and misconstrues the District Court's determinations that the scanner and computer recited within the CET Patents "are not integral to the claims" and that the claims "seek to effectuate 'the broad idea of extracting, storing and sending information...in any industry or commercial endeavor, for any purpose, without leaving room for other methods'" as findings of fact. (CET Br. 16-17). As the Order makes clear, however, those are the District Court's conclusions of law, and the District Court dedicated two pages of its opinion explaining how it came to determine "the basic flaw in the Patents-in-Suit: they attempt to patent the abstract idea of extracting information from a hardcopy document, recognize certain information on that document, and save certain user selected information in computer memory." (A22-A23).

CET's argument appears to urge an objective standard by which every patent Complaint would be entitled to full discovery, including claim construction, a determination of the knowledge of the hypothetical person skilled in the art, and consideration of both intrinsic evidence (claims, specification, prosecution history) and extrinsic evidence (expert testimony), before a decision regarding patent eligibility under 35 U.S.C. § 101 could be appropriate. (CET Br. 17-20). As this

Court knows, that is *not* the law and neither should it be. *Ultramercial II* does not require such a standard and indeed no case does. Read correctly *Ultramercial II* did no more than indicate that dismissal due to invalidity under 35 U.S.C. § 101 under Fed. R. Civ. P. 12(b)(6) would be "rare," but, were CET's argument here the law, this Court could not have further observed in *Ultramercial that* "if Rule 12(b)(6) is used to assert an affirmative defense, dismissal is appropriate" in some circumstances. *Id.* (internal citations omitted).

The plain fact is that CET's argument would read Fed. R. Civ. P. 12(b)(6) out of the Federal Rules for a patent infringement defendant alleging invalidity under § 101. CET's suggestion should be rejected.

### C. The District Court Properly Invalidated All Claims of The CET Patents Without Requiring a Claim-By-Claim Analysis For Each of the Two Hundred Forty Two Claims at Issue

In reaching its conclusion of invalidity, the District Court determined that all the claims of the CET Patents, which share a common specification, are directed towards a single abstract process. (A5). That manifestly was a correct observation of the scope of the patent claims. Despite CET's argument that "PNC had the burden to establish invalidity through claim-by-claim analysis, and do so by clear and convincing evidence," (CET Br. 21) the District Court used the correct standard to invalidate all of the claims of the CET Patents, which the Court recognized: "Where the claims, as here, are substantially similar and linked to the

same abstract idea, the Court is free to dispose of the additional claims in a less detailed fashion." (A12).

Further, in its motion to dismiss, PNC Bank expressly asserted that all 242 claims of the CET patents contain "similar claims," all directed toward the same unpatentable abstract method. (A208-A211). It was clear to CET and to the District Court that PNC Bank's motion was directed to *all* of the claims of the CET Patents, and that PNC Bank had alleged that *all* of the claims of the CET Patents were directed toward variations of a single abstract method. (CET Br. 3-4, 21), A243. Despite having had ample opportunity to distinguish for the District Court even one claim from the method that PNC Bank was alleging is abstract, CET's Opposition merely argued that it "was not required to identify in the Complaint specific asserted claims of the patents-in-suit." (A240, fn. 11). The fact is, however, that had CET, which obviously knows the extent of its claims, wanted to distinguish even one claim, it could have done so. It did not, and the consequence of that failure is rejection of that argument here, for arguments that are not appropriately developed in a party's briefing in the District Court, as CET's argument here, are deemed waived. *SmartGene*, No. 2013-1186 at *7 (non-precedential); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases). Because CET failed to raise an argument that any one of the 240 remaining claims were directed towards anything *other* than the

single abstract method as alleged by PNC Bank, CET has forfeited any argument here that its patent claims are to be treated differently from the claims analyzed by the District Court. Put another way, it cannot be error for the District Court to have failed to do what the appellant did not put before the Court. *Ibid.*

## VII. ARGUMENT

### A. Standard of Review

Pursuant to Fed. Cir. Rule 28(b), Appellees enlarge CET's Standard of Review as follows.

The question of patent eligibility under 35 U.S.C. § 101 is an issue of law. *SmartGene, Inc. v. Advanced Biological Laboratories, SA, et al.*, No. 2013-1186, *5 (Fed. Cir. 2014) (non-precedential) (*citing Bancorp Servs. L.L.C. v. SunLife Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

In addition, while CET is correct that this Court should review the District Court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) *de novo*, this Court should not "consider arguments raised for the first time on appeal." *Energy Transp. Group v. William Demand Holding A.S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012). "[L]egal issues in patent infringement suits are not immune to the doctrine of waiver on appeal, and except for certain circumstances, those issues not raised below at the district court cannot be heard for the first time on appeal." *Conoco, Inc. v. Energy & Environmental Intern.*, 460 F.3d 1349, 1358 (Fed. Cir. 2006)

Case: 13-1588 Document: 43 Page: 27 Filed: 03/06/2014

(*citing Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1344-1345 (Fed. Cir. 2001) ("[A]ppellate courts are courts of review and '[n]o matter how independent an appellate court's review of an issue may be, it is still no more than that — a review.'")(*quoting Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997))). This Court may also decline to consider issues raised, but not adequately briefed by CET at the district court level because "[i]t is well-established that arguments that are not appropriately developed in a party's briefing may be deemed waived." *SmartGene*, No. 2013-1186 at *7 (non-precedential); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases).

Finally, although the review by this Court is *de novo*, CET, as the appellant, must show this Court that errors were made by the District Court, and also that those errors were not harmless and affected CET's substantial rights. 28 U.S.C. § 2111; Fed R. Civ. P. 61. CET must meet its burden in showing this Court that prejudice resulted from any of District Court's ruling. *See, Shinseki v. Sanders*, 556 U.S. 396, 129 S. Ct. 1696, 1705 (2009).

### B. Standards for Determining Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act defines four categories of patentable subject matter: processes, machines, manufactures, and compositions of matter. 25 U.S.C. § 101. The Supreme Court has recognized "three specific exceptions to § 101's

broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010)(citing *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). As the Supreme Court has explained, "[p]henomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," and "an application of a law of nature or a mathematical formula to a known structure or process may well be deserving of patent protection." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981) (internal quotation marks omitted). However, "limiting an abstract idea to one field of use or adding post-solution components d[oes] not make the concept patentable." *Bilski*, 130 S.Ct. at 3231. In other words, a recitation of ineligible subject matter does not become patent-eligible merely by adding the words "apply it." *See Prometheus*, 132 S. Ct. at 1294.

In *Bilski*, the Supreme Court held that the machine-or-transformation test ("MOT test") is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101. *Bilski*, 130, S. Ct. at 3227. A court, however, should not exclusively rely on the MOT test to determine whether a patent claim covers an abstract idea. *Id.* A court should look to the

Case: 13-1588 Document: 43 Page: 29 Filed: 03/06/2014

guideposts of *Benson, Parker v. Flook*, 437 U.S. 584 (1978) and *Diehr* in analyzing the § 101 issue. *Bilski*, 130 S. Ct. at 3231.

The Supreme Court has not yet endeavored to more precisely define what constitutes a non-statutory abstract idea; rather, it evaluates each claim against the framework established by its precedents. *See Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1299 (2012)("The claim before us presents a case for patentability that is weaker than the (patent eligible) claim in *Diehr* and no stronger than the (ineligible) claim in *Flook*"). Citing *Flook* and *Bilski*, the *Prometheus* Court expressly ruled that "a process that focuses upon the use of a natural law [abstract idea] [must] also contain other elements or combination of elements, sometimes referred to as an 'inventive concept'". *Id.* at 1294. "[W]ell understood, routine, conventional activity" cannot provide an inventive concept. *Prometheus*, 132 S. Ct. at 1298; *see Bilski*, 130 S. Ct. at 3230 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by...adding insignificant post-solution activity")(internal quotation marks omitted).

Application of these principles, buttressed by other authorities from this Court leave open no avenue of escape from the conclusion that the District Court correctly invalidated the patents asserted in these actions. That decision should be affirmed as we elaborate within.

### C. The District Court Appropriately Applied Prevailing Law in Dismissing CET's Actions

#### 1. The CET Patent Claims are Non-Statutory Under the "Mental Steps" Approach

This Court, in *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011), analyzed the subject matter eligibility issue under an approach that Appellants refer to herein as the "mental steps" approach. However described, the analysis of *CyberSource* as applied here, requires affirmance of the District Court's dismissal. In *CyberSource*, the patent related to a method for detecting credit card fraud over the Internet. The first step of the claim involved gathering data on credit card transactions over the Internet, a step which "cannot alone confer patentability." *CyberSource*, 64 F.3d at 1372. The second step of the claim was the construction of a map of credit card numbers, which the Court determined could consist of no more than "a list of a few credit card transactions." *Id.* The third step used the map to determine if the credit card transaction was valid. *Id.* at 1373.

This Court found that the *CyberSource* method claim was in fact directed to an unpatentable mental process because all of the steps "can be performed in the human mind, or by a human using a pen and paper," reasoning that "computational methods which can be performed *entirely* in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are

Case: 13-1588 Document: 43 Page: 31 Filed: 03/06/2014

free to all men." *Id.* at 1372-3 (quoting *Benson*, 409 U.S. at 67). The same can be said of the asserted method claims here, with the same result: invalidation of the claims.

Indeed, the CET Patent claims are analogous to one of the non-statutory claims at issue in *CyberSource* (claim 3) in that the process steps of the CET Patent claims (receiving, recognizing, storing) can all be performed in the human mind. While the CET Patent claims differ from the *Cybersource* claim in that the CET Patent claims expressly recite a "scanner" or "image digitizer," this difference, as the District Court explicitly recognized, is insignificant in the § 101 analysis because the use of a "scanner" or "image digitizer" is incidental to the claimed process. *See SmartGene, Inc. v. Advanced Biological Laboratories, SA, et al.*, No. 2013-1186, *8 (Fed. Cir. 2014) (non-precedential); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012); *Benson*, 409 U.S. at 73-74 (claim was held to be non-statutory despite the presence of physical computer structure). Accordingly, the CET Patent claims are non-eligible subject matter under the mental steps approach, requiring affirmance of the District Court's decision.

CET's only argument against this sound conclusion is that the scanner (or image digitizer) operates in a digital environment, must, according to CET operate beyond the scope of the human mind. As CET puts it:

> "A scanner is a device that converts an image of a hard copy document into a stream of bits that correspond to the colors and

> shades of specific pixels of the image. The processing of such a bit stream is generally well beyond the ability of people to perform. The computer-implemented steps of the of the method claims do not duplicate similar steps that can be performed by people; this is not the case where a computer is used simply to perform the same steps faster than a person could perform them."

(CET Br. 28-29).[9] Whatever CET means by this formulation of language, the argument proves too much, for, if accepted, would render *any* claim that involved a digital device patentable under § 101, as all digital devices operate to process "bit streams of information." That is not the law. The fact is that CET's argument represents but a mass of words that have no legal significance. The District Court's conclusions respecting the asserted, patented method are sound as both a matter of fact and of law.

As the District Court recognized, the CET Patent claims recite a series of steps that set forth an abstract idea, including receiving information from a hard copy document (data gathering), recognizing the data as pertaining to various fields (data organization), and storing the information in a memory (data organization). These steps do *not* represent a patent-eligible application of an abstract idea but rather, simply the non-patent-eligible processes of human

---

[9] Once again, CET did not raise this argument in the District Court, choosing to argue only that the inclusion of a scanner meets the MOT test. (A244-A247). This new argument is accordingly improperly raised here as CET has waived this argument. *Conoco*, 460 F.3d, at 1358. It should be rejected for this reason alone, although, even considered on its substance produces the same result: rejection of the argument and affirmance of the Orders appealed from.

Case: 13-1588 Document: 43 Page: 33 Filed: 03/06/2014

thinking, precisely as the District Court found. Although CET argues that "this is not the case where a computer is used simply to perform the same steps faster than a person could perform them," (CET Br. 28-29), that is precisely what the claim embraces. It is beyond argument that United States banks have been clearing checks manually for nearly 100 years. Specifically, bank tellers have manually utilized the information contained in various check fields in order to properly debit and credit (*i.e.*, reconcile) appropriate bank accounts.

These facts demonstrate that the only thing the purported invention accomplishes is to speed up this reconciliation, as the Specification itself claims. Even CET cannot escape this conclusion as it admits that the "process claims are directed to labor saving methods..." (CET Br. 29). "In this way, labor and delays from **manual processing of information** embedded in ink and paper of the hard copy documents are reduced, or even completely avoided.") (CET Br. 6) (emphasis added). Indeed, the common patent specification readily admits that the purpose of the purported invention is to speed up the process of reading and inputting information from hard copy documents, currently performed manually. ("It is also an object of the invention to provide a system which reduces the amount of **manual labor** required to process information originating from a hard copy document") (A105) (emphasis added).

Case: 13-1588 Document: 43 Page: 34 Filed: 03/06/2014

In another futile effort to discredit the District Court's conclusion CET attempts to analogize the scanner (or image digitizer) of the CET Patents to the GPS receiver in *SiRF Tech, Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010), arguing that the presence of the scanner "places a meaningful limit on the scope of the claims." (CET Br. 32). This CET argument too is misguided. CET overreaches when it argues "[j]ust as the claims in the *SiRF* patents could not be performed without the use of a GPS receiver to determine the position of the receiver, the claims of [the] CET Patents cannot be performed without a scanner/digitizer that creates digital representations of hard copy documents." (CET Br. 32-33). This argument proves too much for neither can the typical human mind, without the aid of maps, compasses, and/or other tools, identify automatically the location of a person. By contrast, the human mind can read and process information, including check numbers, routing numbers, dollar amounts and account information from hard copy documents – and such manual methods have been used by bank tellers to reconcile checks for nearly a century. CET's argument that its method cannot be performed *without* a machine is contrary to decades of human experience and stretches this Court's holding in *SiRF* beyond all meaning.[10]

[10] Similarly, CET attempts to stretch this Court's holding in *Research Corp. Tech., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010), where the patented method involved a new application for digitizing images. The CET Patents claim the transfer to machines what humans have done for years.

Case: 13-1588 Document: 43 Page: 35 Filed: 03/06/2014

### 2. The District Court Properly Determined that the CET Patent Claims Failed The MOT Test

The District Court reached its conclusion that all of the claims of the CET Patents were directed to non-statutory subject matter by analyzing the claims using the precedential guideposts of *Bilski*, *Alice Corporation PTY Ltd. v. CLS Bank International,* 717 F.3d 1269 (Fed. Cir. 2013, *en banc) cert. granted* ---US---(Dec. 6, 2013); *Ultramercial II*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011) and *Bancorp*. (A6-A8). The District Court thus appropriately followed the claim analysis as required by prevailing law in concluding that the claims were directed to abstract concepts. This is precisely what *Prometheus* requires – it does not require a court to employ any specific test in making its analysis.

Importantly, CET only makes a blanket assertion[11] without meaningful analysis that "[t]he scanner and the computer play a significant part in the operation of the claimed methods, and therefore the claims pass the Machine-or-Transformation ("MOT") test and are patent eligible." (CET Br. 11) (citing *SiRF Tech*, at 1333. This is an inadequate argument as CET has failed to demonstrate that the District Court erred in applying the MOT test; accordingly, CET has

[11] Not only does CET fail to provide an analysis under the MOT test, it does not at all address the transformation prong of the test. Thus, CET has waived any argument to the contrary. *Conoco*, 460 F.3d, 1349 at 1358.

waived any argument purporting to challenge the District Court's application of the MOT test. *Conoco, Inc. v. Energy & Environmental Intern.*, 460 F.3d 1349, 1358 (Fed. Cir. 2006).

The focus of analysis under § 101 is on the claims. *See, e.g., Dealtertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012); *SmartGene*, No. 2013-1186, at *7-10 (non-precedential) (analyzing only claims); *Bilski*, 130 S. Ct. at 3231 (analyzing only claims); *Benson*, 409 U.S. at 63-74 (analyzing only claims); *Flook*, 437 U.S. at 587-95 (analyzing only claims); *Diehr*, 450 U.S. at 184-92 (analyzing only claims). The CET Patent claims recite only a scanner and general purpose processors – they do not recite any specific apparatus that would qualify as a specially programmed computer. *Dealtertrack*, 674 F.3d at 1334 (Fed. Cir. 2012). Nor does it "purport to identify new computer hardware: it assumes the availability of physical components for input, memory, look-up, comparison and output." *SmartGene*, No. 2013-1186, at *9 (non-precedential).

The District Court properly found, after considering *SiRF*, *Dealtertrack*, *Bancorp*, *CyberFone*,[12] and *Ultramercial II*, that "the Court can state with certainty that it has concluded by clear and convincing evidence that the claims contained in

---

[12] The District Court relied on the District Court of Delaware's holding in *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012), in conducting its analysis. That holding was very recently affirmed by this Court. *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, ___ Fed. App'x ___, Nos. 2012-1673, -1674, (Fed. Cir. Feb. 26, 2014) (non-precedential).

Case: 13-1588 Document: 43 Page: 37 Filed: 03/06/2014

the [CET Patents] do not pass the machine prong." (A21). The District Court therefore properly determined that "[unlike *SiRF*, the scanner here is not integral to the first step in the claims in which it is featured because the step in which it is used **can be accomplished without using a scanner or similar device**. Simply stated, gathering information from a hardcopy document **can be done by hand and manually input into a general purpose computer**." (A20)(emphasis added).

The District Court's conclusion is further supported by the plain language of the claim, the specification, and arguments made to this Court in CET's Opening Brief. Specifically, the patent claims only cover a method of processing information comprising receiving, identifying and storing information from hard copy documents. (A139). The common patent specification discloses that the purpose of the purported invention is to speed up the reconciliation process, currently performed manually. ("It is also an object of the invention to provide a system which reduces the amount of **manual labor** required to process information originating from a hard copy document") (A105) (emphasis added). CET, apparently aware that the purpose of the patent, confirms the District Court's conclusion, admits to this Court that the "process claims are directed to labor saving methods..." (CET Br. 29). "In this way, labor and delays from **manual processing of information** embedded in ink and paper of the hard copy documents are reduced, or even completely avoided.") (CET Br. 6) (emphasis added).

Case: 13-1588 Document: 43 Page: 38 Filed: 03/06/2014

Because CET did *not* argue that the District Court committed any error in its analysis, and because CET's statements confirm the accuracy of the District Court's conclusion, this Court should affirm the District Court's decision that the CET Patents are invalid under 35 U.S.C. § 101.

### 3. The CET Patent Claims are Directed to Abstract Subject Matter Under The Preemption Approach

The so-called "preemption" approach is a further analytical method, as described in the concurring opinion in *CLS Bank* and in the concurrence in *Ultramercial II* to test and reinforce a conclusion that a patent is addressed to ineligible subject matter. Once again, CET should not be heard in this Court to raise this argument as it did not make this argument in the District Court. *Conoco*, 460 F.3d, at 1358. In this Court, however, CET for the first time argues that the claims of the CET patents do not preempt methods where the receipt of information "is preceded by scanning, via said automated digitizing unit, of a separate document containing format requirements."[13] (CET Br 37). Although it should not be heard to make the argument, the fact is that CET misinterprets the

[13] CET further argues that the CET Patents do not preempt "recognizing document portions corresponding to a particular data field" and "storing the information from the portions [of] the documents corresponding to the first data field into memory locations that corresponds to that particular data field." Those assertions are irrelevant as shown above because these steps have been executed manually by bank tellers in order to clear checks for nearly a century.

preemption approach.[14] Properly understood and applied, the District Court's Order deserves affirmance under this analytical method as well.

Under the preemption approach, a court must first identify whether the claimed invention fits within one of the four statutory classes set out in § 101. *CLS Bank*, *supra,* 717 F.3d at 1282-1283. Second, the court must assess whether any of the judicial exceptions to subject-matter eligibility apply, including whether the claims are to patent-ineligible abstract ideas. *Id.* For abstractness, the court determines whether the claim poses any risk of preempting an abstract idea. *Id.* To do so, the court must first identify and define the fundamental concept that is wrapped up in the claim. *Id.* The court must then evaluate the balance of the claim to determine whether additional substantive limitations narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself. *Id.* The District Court properly and appropriately applied prevailing law to reach its conclusion.

[14] CET is apparently arguing that there can be no finding of abstractness under the preemption approach because the CET Patents do not preempt any method that does not fall within the scope of its claims. The distinction is irrelevant. Every patent preempts others from practicing the subject matter that falls within the scope of its claims. Here, CET's patents preempt the broad implementation of the claimed methods *because* the claimed matter itself is coextensive with the abstract idea itself. *See CLS Bank*, *supra,* 717 F.3d at 1281.

Although CET Patent claims may broadly fall under the "process" category of patent-eligible subject matter, they also fall within the abstract idea exception. The abstract idea embodied in the CET Patent claims is the process of gathering and storing information from hard copy documents, just as the District Court found.

The balance of the CET Patent claims add no substance or meaning apart from the abstract idea, notwithstanding CET's contention that the "preceded by scanning" limitation adds meaning to the claim. (CET Br. 36-37). It adds no substance at all. The scanner does nothing more than automate a human's reading of the hard copy document and inputting the information from the appropriate fields, steps that CET has admitted are performed without computers. (CET Br. 6, 29) (A105). The CET Patent claims manifestly do not recite a single function that cannot be (and has not been) performed by a human in his/her mind or using a pen and paper. *See Cybersource*, 654 F.3d at 1372. There is no specific or limiting recitation of improved computer technology. *See Research Corp. Techs. Inc. v. Microsoft Corp.*, 627 F.3d 859, 865, 868-869 (Fed. Cir. 2010). Simply appending generic computer (or scanning) functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit the claim scope for the purposes of patent eligibility. *CLS Bank*, *supra,* 717 F.3d at 1286 (citations omitted). In short, the presence of the scanner in the CET Patent

claims, as the District Court manifestly recognized, fails to supply an inventive concept that represents a nontrivial, nonconventional human contribution or materially narrows the claims relative to the abstract idea they embrace. *Id.*

### D. The District Court Properly Determined that Detailed Factual Findings Were Unnecessary to Determine the CET Patents Are Invalid Under § 101

CET asserts that the District Court erred in determining the CET Patent claims are invalid under § 101 without making any factual findings, stating "[t]he general rule requiring factual findings before claims can be invalidated is hardly subject to reasonable disagreement." CET mischaracterizes or misunderstands what the District Court did here. Although this Court in *Ultramercial II* indicated that it will be "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter," it also determined that "[i]f Rule 12(b)(6) is used to assert an affirmative defense, dismissal is appropriate only if the well-pleaded factual allegations in the complaint, construed in the light most favorable to the plaintiff, suffice to establish the defense." *Ultramercial II*, 722 F.3d 1335, 1338 (Fed. Cir. 2013). That is precisely what the District Court did here.

The District Court determined that "commensurate with the instruction of the *Ultramercial II* court, the [CET Patents] encapsulate invalid abstract ideas, even when construed in the manner most favorable to Plaintiff." (A11). The

District Court then resolved every factual inquiry in favor of CET and determined that the CET Patents claimed "invalid abstract ideas." (A11). CET's cavil about the District Court's process in reaching its decision is accordingly wrong.

Indeed, CET itself identifies specific examples of factual inquiries it contends "appear to be findings of fact"[15] resolved in favor of PNC are not factual inquiries at all – they are questions of law properly resolved by the District Court. For example, CET argues that the following statements by the District Court (including unspecified "others") comprise factual findings by the District Court's: (1) that the scanner and computer referenced in the CET Patents are not integral to the claims, (2) that none of the various steps contained in the claims in the CET Patents otherwise tie the claims to a machine in a manner that would indicate that the CET Patents are an application of an abstract idea rather than the idea itself, (3) that the claims are not directed to any specific application or any specific machine-implemented intermediate steps, (4) that the claims seek to effectuate the broad idea of extracting, storing and sending information, (5) that the computer in the CET Patents is a general purpose computing device, (6) that the CET Patent claims attempt to patent the abstract idea of extracting information from a hardcopy document, recognize certain information on that document and save certain user

[15] (CET Br. 17)

selected information in computer memory, and (7) that the breadth of the CET patents is "staggering." None of these statements are a recitation of fact-finding where there were competing "versions" that the District Court found *against* CET. Rather, they are all legal conclusions that the CET Patents impermissibly attempt to claim an abstract idea.

It was simply not necessary for the District Court to formally construe the claims as part of the "abstract idea" inquiry. In *Bilski*, the Supreme Court found the claims to be non-statutory as directed to an abstract idea without claim construction. Likewise, this Court has held that claim construction is *not* absolutely required for the "abstract idea" inquiry. *See Bancorp*, 687 F.3d at 1273; *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, ___ Fed. App'x ___, Nos. 2012-1673, -1674, slip op. at 7 n.1 (Fed. Cir. Feb. 26, 2014) (non-precedential) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility.")

Here, the CET Patent claims are simple and, in any event, no more complex than the claims at issue in *Bilski*. The District Court here had no trouble determining that the CET Patents embodied a simple, abstract concept:

> "As discussed more fully below, the Patents-in-Suit focus on the processing of information in a three step process. First, information or data from a hard copy is gathered by an 'automated digitizing unit,' such as a scanner, into computer memory. Second, the information gathered by the scanner is recognized as corresponding to certain data fields. Third, the information corresponding to the data fields on the

hard copy documents are then stored in corresponding data fields in computer memory."(A5).

Indeed, CET has not demonstrated a single instance where the District Court erred in its resolution of facts in its favor. That CET disagrees with the District Court's legal conclusions are irrelevant. CET's failure to demonstrate even one deviation from prevailing law in the District Court's decision invaliding the CET claims is itself proof of the correctness of the District Court's decision.

What CET is actually arguing for is an objective standard wherein every patent claim (including all 242 of its patent claims in the instant action) would be entitled to full discovery, including claim construction, a determination of the knowledge of the hypothetical person skilled in the art, and consideration of both intrinsic evidence (claims, specification, prosecution history) and extrinsic evidence (expert testimony), *before* a decision regarding patent eligibility under 35 U.S.C. § 101 could be appropriate. (CET Br. 17-20). Understandably, CET makes that argument without any authority, for the consequence of that argument would be to read Rule 12(b)(6) out of the Federal Rules for patent cases where § 101 is pleaded as an affirmative defense. This Court has specifically observed that "if Rule 12(b)(6) is used to assert an affirmative defense, dismissal is appropriate only if the well-pleaded factual allegations in the complaint, construed in the light most favorable to the plaintiff, suffice to establish the defense." *Ultramercial II* (internal citations omitted). CET's argument robs this Court's direction in

Case: 13-1588 Document: 43 Page: 45 Filed: 03/06/2014

*Ultramercial II* of meaning. Were CET's argument the law, Fed. R. Civ. P. 12(b)(6) would not be available at all at the pleading stage to a patent infringement defendant alleging invalidity under § 101. In short, this Court has made clear that only certain patent disputes are ripe for disposition on a 12(b)(6) motion to dismiss, but this is one of them. (A9) (citations omitted).

The District Court here followed this Court's directions with care and precision and was satisfied by clear and convincing evidence that the claims were ineligible for patenting under §101. This Court should affirm.

### E. The District Court Properly Determined that an Explicit Claim-By- Claim Analysis is Not Required to Invalidate the CET Patents

In reaching its conclusion of invalidity, the District Court determined that all the claims of the CET Patents, which share a common specification, are directed towards an abstract process:

> "As discussed more fully below, the Patents-in-Suit focus on the processing of information in a three step process. First, information or data from a hard copy is gathered by an 'automated digitizing unit,' such as a scanner, into computer memory. Second, the information gathered by the scanner is recognized as corresponding to certain data fields. Third, the information corresponding to the data fields on the hard copy documents are then stored in corresponding data fields in computer memory."(A5).

The District Court acknowledged that "[v]arious iterations of the patents and claims explicitly insert a user, for example interacting with a display and selecting certain data fields to be saved, into the process at various steps." (A5). Despite

CET's argument that "PNC had the burden to establish invalidity through claim-by-claim analysis, and do so by clear and convincing evidence," (CET Br. 21) the District Court employed the correct standard to invalidate all of the claims of the CET Patents: "Where the claims, as here, are substantially similar and linked to the same abstract idea, the Court is free to dispose of the additional claims in a less detailed fashion." (A12). CET's argument ignores this Court's directions which expressly permit method, system and computer program products to be grouped together for the purposes of analysis under § 101. *See SmartGene, Inc. v. Advanced Biological Laboratories, SA, et al.*, No. 2013-1186, *6-7 (Fed. Cir. 2014) (non-precedential); *Bancorp Servs. L.L.C. v. SunLife Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012).

Further, PNC Bank expressly asserted in its motion to dismiss that *all* 242 claims of the CET patents contain "similar claims" directed towards the same unpatentable abstract method. (A208-A211). It was thus clear to CET and to the District Court that PNC Bank's motion was directed to *all* of the claims of the CET Patents, and that PNC Bank alleged that *all* of the claims of the CET Patents were directed toward variations of a single abstract method. (CET Br. 3-4, ("...PNC asserted that the claims of the CET Patents are directed to subject matter that is not patent eligible, and therefore the claims are invalid."), CET Br. 21 ("PNC simply asserted that all other claims are similar to the two claims it actually discussed."),

A243 (arguing that "there is no basis to decide patent eligibility of the well over two hundred claims that Defendants did not address in their Opening Brief.")). Despite having had a full opportunity to distinguish even one claim from the method that PNC Bank was alleging is abstract,[16] CET's District Court argument merely asserted that it "was not required to identify in the Complaint specific asserted claims of the patents-in-suit." (A240, fn. 11). It is well-established that arguments that are not appropriately developed in a party's briefing may be deemed waived. *SmartGene*, No. 2013-1186 at *7 (non-precedential); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases). Because CET failed to raise an argument that any one of the 240 remaining claims were directed toward anything other than the single abstract method as alleged by PNC Bank, CET has forfeited any argument that its patent claims here

[16] CET had a number of options for distinguishing one or more of the 242 claims from PNC Bank's assertion that the two claims were representative of the abstract method. For example, CET could have (1) identified a distinguishing claim in its Opposition Brief, (2) sought leave from the District Court to file a sur-reply brief (D.N.J. L. Civ. R. 7.1(d)(6), or (3) filed an Amended Complaint identifying one or more specific claims which CET believed were not representative of the method claimed by PNC to be abstract. It did none of those. Instead, CET chose to argue that it was not necessary to identify claims (A240, fn. 11) and CET must now live with consequences of that decision here. *Energy Transp. Grp., Inc. v. Wm. Demand Holdings A.S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012).

Case: 13-1588 Document: 43 Page: 48 Filed: 03/06/2014

are to be treated differently from the claims analyzed by PNC Bank in its motion to dismiss.

Thus, the District Court was well within its discretion in addressing the invalidity of all 242 claims of the CET Patents.

**F. A Court had Previously Invalidated The Invention Claimed in The Patents-In-Suit and The Mere Addition of a Scanner to Digitize Information Cannot Resuscitate The Invention**

The CET Patents are merely four in a long chain of related patents (the "Medina Portfolio"[17]). One subset of patents from the Medina Portfolio was asserted by Eon-Net, LP against various entities, including Flagstar Bancorp. In 2011, this Court affirmed a decision from the United States District Court for the Western District of Washington, holding that the District Court properly construed the claims of the patents, and upholding sanctions against Eon-Net, LP and its attorney Jean-Marc Zimmerman, Esq.[18] for filing an objectively baseless lawsuit and practicing patent enforcement strategies that had "indicia of extortion." *Eon-Net, LP, Zimmerman & Levi, L.L.P. and Jean-Marc Zimmerman v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011).

[17] Mitchell Medina is one of the inventors listed on the various patents in the portfolio. He created other patent-holding companies, including Millennium L.P., Eon-Net, L.P., and Glory Licensing, LLC to enforce the Medina Portfolio.

[18] Apparently Mr. Zimmerman had acquired an interest in at least some of the remaining patents of the Medina Portfolio and was therefore listed not only as attorney of record for CET, but also as a party in the caption of the present case.

In 2009, a company called Glory Licensing, LLC ("Glory") attempted to enforce three patents from the Medina Portfolio against Toys "R" Us, Inc. The United States District Court for the District of New Jersey granted defendant Toys "R" Us, Inc.'s motion to dismiss, holding the asserted Medina Portfolio patents invalid[19] under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. *Glory Licensing LLC v. Toys R Us, Inc.*, Case No. 09-cv-4252-FSH; 2011 WL 1870591, *11 (D.N.J. 2011). The patents asserted by Glory included United States Patent Number 7,570,383, (the "'383 patent") 7,619,768, and 7,672,007 (the "Glory patents"). As part of the Medina Portfolio, the Glory patents share a common specification with the CET Patents, are identically titled "Information Processing Methodology" and are directed to the same abstract invention. For example, Claim 1 of the '383 patent recites:

> Claim 1. A method of processing information operating on a first computer system comprising at least one computer, which comprises:
>
> a. receiving a file by transmission from another computer system external to said first computer system and automatically displaying said file on a computer display as a template;
>
> b. automatically selecting and extracting information from said file according to content instructions;

[19] Jean-Marc Zimmerman, Esq. represented Glory in the action against Toys "R" Us, Inc. Mr. Zimmerman was therefore well aware of the existence of this matter and applicability to the current actions.

c. providing utilities capable of automatically routing the extracted information as input information to an unrestricted diversity of application programs according to customizable transmission format instructions tailored to enable correct processing of the input information by any application program that requires said input information;

d. transmitting said input information to each application program requiring said input information; and

e. automatically processing said input information by said each application program.

*Glory Licensing*, 2011 WL 1870591, *6-7, fn. 5. Notably, the method recited in claim 1 of the '383 patent mirrors the claims of the CET Patents,[20] the only difference being the method of input of information into the system. Specifically, replacement of the first element ("receiving a file by transmission") with inputting the information by detecting same by scanning a hard copy document yields the invention of the CET Patents.

The United States District Court invalidated all of the claims of the Glory patents, upon motion to dismiss, as invalid under 35 U.S.C. § 101 and neither Glory nor CET can challenge that holding because appeal proceedings available to Glory have been exhausted. *Id*. *11; *appeal dismissed*, 459 F. App'x 916 (Fed. Cir. 2011). CET now claims that its patent claims are valid, despite claiming the same underlying abstract method that was invalidated by the *Glory Licensing*

[20] This is to be expected from patents which share common inventorship, title, lineage and specification.

court. It defies logic how CET can now argue here[21] that utilization of a scanner to input information into the conclusively invalid and abstract method can breathe new life into the otherwise lifeless Medina Portfolio.

This Court's holding in *Accenture Global Services, GMBH et al. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) is instructive. In *Accenture*, the majority of this Court determined that because the system claims were virtually indistinguishable from the invalidated (and not appealed) abstract method claims, the system claims were invalid as abstract. *Accenture*, No. 2011-1486, at *1341-44. Here, the method claims of the CET Patents cover virtually the same method as the related claims of the Medina Portfolio that were invalidated (and not appealed) in the *Glory Licensing* matter. Therefore, because the underlying method claimed in the Media Portfolio has been finally determined to be invalid as abstract under § 101, the addition of a scanner to input information into the system from hard copy documents as a replacement for a human reading and inputting information into the system from hard copy documents cannot resuscitate the CET Patent claims.

---

[21] Given the common counsel shared by Eon-Net, LP, Glory Licensing, LLC and CET, it is remarkable that the current actions alleging infringement of the CET Patents were initiated. CET, by virtue of its counsel, should have known its patents were invalid under § 101.

## VIII. CONCLUSION AND RELIEF SOUGHT

The claims of the CET patents are all directed to abstract ideas and are therefore not eligible for patent protection as the District Court properly found in granting PNC Bank's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). CET has not met its burden in demonstrating that the District Court committed any errors of law, nor that if any errors were committed, those errors were prejudicial and not harmless. The invalidation of the CET Patents in the PNC Bank action necessarily required the dismissal of the action against Wells Fargo. Therefore, this Court should affirm the District Court's Order, dismissing the actions against them, with costs.

Respectfully submitted,
Attorneys for Appellees

The PNC Financial Services Group, Inc.
and PNC Bank, N.A.

*Noam J. Kritzer /s/*

Noam J. Kritzer
Bakos & Kritzer
147 Columbia Turnpike
Suite 102
Florham Park, New Jersey 07932
Tel: (908) 273-0770
nkritzer@bakoskritzer.com

Attorneys for Appellee
Wells Fargo Bank, N.A.

KILPATRICK TOWNSEND &
STOCKTON LLP

*Frederick L. Whitmer /s/*

Frederick L. Whitmer
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 775-8700

Case: 13-1588 Document: 43 Page: 54 Filed: 03/06/2014

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2014, I will electronically file the following:

**BRIEF OF DEFENDANT-APPELLEES THE PNC FINANCIAL SERVICES, INC., PNC BANK, N.A. AND WELLS FARGO BANK, N.A.**

(text searchable)

with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Counsel for Appellant, Content Extraction and Transmission, LLC

Jean-Marc Zimmerman
Anatoly S. Weiser
ZIMMERMAN & WEISER LLP
226 St. Paul Street
Westfield, New Jersey 07090
Tel: (908) 954-8000
jmz@iplcounsel.com
aw@iplcounsel.com

*Fredeerick L. Whitmer /s/*
Frederick L. Whitmer
Kilpatrick, Townsend & Stockton LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 775-8700

Case: 13-1588 Document: 43 Page: 55 Filed: 03/06/2014

**CERTIFICATE OF COMPLIANCE**

I hereby certify that foregoing brief on behalf of all Appellees complies with the type volume limitations of the Federal Rules of Appellate Procedure and of the Rules of Practice of this Court, is proportionally spaced, has a typeface of 14 points Times New Roman and contains 10,975 words, inclusive of footnotes, for those sections of the brief that are to be included within this Certificate of Compliance.

*Fredeerick L. Whitmer /s/*
FREDERICK L. WHITMER

March 6, 2014